NIMA FARBOODY (CA BAR NO. 262371)
20255 Corisco St.
Chatsworth, CA 91311
Tel: 818-886-3200
Email: nfarboody@mazalent.com

Attorney for MAZAL GROUP, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAZAL GROUP, LLC, a California limited liability company<br><br>    Plaintiff,<br><br>  vs.<br><br>AMANDA STANWIX, an individual dba BEAUTY BRANDS,<br>LIOR CHENE AZULAY (AKA LIOR CHENE), an individual dba GLAMOUR SPOT<br>and DOES 1 to 10,<br><br>    Defendants. | Case No.: 2:18-cv-7562<br><br>**COMPLAINT FOR:**<br>1) **BREACH OF CONTRACT**<br>2) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**<br>3) **NEGLIGENT INTERFERENCE WITH AN ECONOMIC RELATION**<br>4) **FRAUDULENT MISREPRESENTATION**<br>5) **TRADEMARK INFRINGEMENT**<br>6) **TRADEMARK DILUTION**<br>7) **UNFAIR COMPETITION UNDER CA BUS. & PROF. CODE SECTION 17200** |

## INTRODUCTION

1. This is an action by MAZAL GROUP, LLC, a California limited liability company ("Plaintiff" or "MAZAL"), to recover damages due to the breach of contract, trademark infringement, and fraud by AMANDA STANWIX, an individual doing business as Beauty Brands, LIOR CHENE AZULAY (AKA LIOR CHENE), an individual, and DOES 1-10 ("Defendants" or "Defendant"), whose names have not yet been determined.

**JURISDICTION**

2. This Court has original jurisdiction over MAZAL's claims due to the matter arising in diversity jurisdiction pursuant to 28 U.S.C §1332 in a claim between citizens of different states in which the matter in controversy exceeds Seventy-Five Thousand US Dollars ($75,000.00). This Court has supplemental jurisdiction over MAZAL's state law claims under 28 U.S.C. §1367. Furthermore, the state law claims contained herein are instituted to the provisions of 28 U.S.C §1332 in that such claims constitute a civil action between citizens of different states in which the matter in controversy exceeds Seventy-Five Thousand US Dollars ($75,000.00).

3. This Court also has original jurisdiction pursuant to 28 U.S. Code § 1338(a) as a matter arising out of Trademark Law under the Lanham Act, 15 U.S.C. § 1051 et seq.

4. This Court has personal jurisdiction over Defendants pursuant to California Long Arm Statute, Cal. Code Civ. Proc §410.10 and pursuant to *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), *Calder v. Jones*, 465 U.S. 783, 788 (1984), *Zippo v. Zippo*, 952 F.Supp. 1119 (1997). Namely, under Specific Jurisdiction, Defendants purposefully availed itself by intentionally performing the act of trademark infringement and Defendants know that their act will impact this state pursuant to *Fighter's Market, Inc. v. Champion Courage LLC*, 2016 U.S. Dist. LEXIS 125122, *13-14 (S.D. Cal. 2016) and the act of infringement, inter alia, impacted the forum state or occurred in the forum state. *Fighter's Market*, 2016 U.S. Dist. LEXIS 125122 at *20-21, *James Malinchak Int'l, Inc. v. Suzanne Evans Coaching, LLC*, 2016 U.S. Dist. LEXIS 135825, *9-10, *Delphix Corp. v. Embarcadero Technologies, Inc.*, 2016 U.S. Dist. LEXIS 114255, *19 (N.D. Cal. 2016).

5. Venue is proper in this District pursuant to 28 U.S.C. §1392(b) because a substantial part of the evens or omissions giving rise to Plaintiff's claims occurred in this District.

6. Furthermore, Defendants' signed agreement with Plaintiff agrees to jurisdiction

and venue to this Court. *See* Exhibit A.

## PARTIES TO THE ACTION

7. Plaintiff MAZAL GROUP LLC is, and at all times material hereto was, a California limited liability company whose principal place of business is in Chatsworth, California.

8. Defendant AMANDA STANWIX is and at all times material hereto was, a natural person residing in Peoria, Arizona and doing business under the name BEAUTY BRANDS as evidenced by the address provided in the agreement attached as Exhibit A (See Recitals and signature page).

9. LIOR CHENE AZULAY (AKA LIOR CHENE) is and at all time times material hereto was, a natural person residing in Davie, Florida doing business under the name GLAMOUR SPOT.

10. Plaintiff, MAZAL is ignorant of the true names and capacities of the defendants sued herein as Does 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitious named defendants is responsible in some manner for the occurrence herein alleged, and that the Plaintiff's damages as herein alleged were proximately caused by their conduct.

## GENERAL ALLEGATIONS

11. Plaintiff, MAZAL is a company engaged in the manufacture and distribution of beauty products. MAZAL engages clients with license agreements to license the right to sell and use trademarks and other intellectual property.

12. On or about May 3, 2018, MAZAL and Defendants entered into an agreement for the licensing and right to sell the Vine Vera®, Bionyx®, Beauty Frizz®,

Venofye®, Celestolite®, and Lionesse® brands ("BRAND") products to which MAZAL had exclusive rights to license at various universities (see Exhibit A). And additionally, Defendants signed as guarantor with full liability thereto.

13.  Among the provisions the agreement in Exhibit A (henceforth the "AGREEMENT" and incorporated by reference herein) were Section 1.03 of the AGREEMENT that outlined the proper channels for the sale of the BRAND products as follows:

> 1.03. <u>Authorized Sales Channels.</u> Licensee shall only sell, offer for sale, or otherwise advertise Brand Products and at the Licensed Location(s)… **Licensee is not authorized to sell, list, advertise or otherwise market MG Products online, either directly or indirectly.**

14.  Pursuant to the AGREEMENT, Defendants agreed to sell such Brand Products strictly according to the above provisions and as such made it a material element of the AGREEMENT the breach of which shall result in a total breach of the AGREEMENT (*See* Section 8 of the AGREEMENT).

15.  On or about March 30, 2018, MAZAL employees discovered numerous Brand Products subject to the AGREEMENT, and specifically Section 1.03, were being sold by eBay.com and Amazon.com sellers "pelicancase1" and "Glamour Spot".

16.  Plaintiff MAZAL obtained a report detailing the identity of Glamour Spot and sent two cease and desist letters to Defendant LIOR CHENE AZULAY. Defendant LIOR CHENE AZULAY subsequently and fraudulently disputed purchases of Brand Products on his credit card, on or about July 19, 2018, claiming the products were smelling odd.

17.  In his credit card dispute, Defendant LIOR CHENE AZULAY does not, at any point, dispute that he intended to purchase the Brand Products on Defendant AMANDA STANWIX's account.

18. Plaintiff verified that the address for pelicancase1 was the same as Defendant AMANDA STANWIX and the Paypal information listed the name as "Mandy Stanwix." Note that Paypal is the payment system associated with eBay.com.

19. Plaintiff has concluded that pelicancase1 is Defendant AMANDA STANWIX and that Glamour Spot is Defendant LIOR CHENE AZULAY.

20. On or about July 19, 2018, MAZAL employees discovered that Glamour Spot and pelicancase1 were selling Brand Products that trace back to Defendants inventory as concluded by the license enforcement professionals employed by Plaintiff MAZAL by tracing the serial/batch numbers on the Brand Products obtained from the above eBay sellers.

21. Additionally, MAZAL employees purchased an item from eBay seller "fet.tyf.qpckzesrx" whose serial/batch numbers connected to AMANDA STANWIX and was indeed sent from AMANDA STANWIX's address.

22. MAZAL employees, on or about July 19, 2018, also discovered purchases made by Defendant AMANDA STANWIX were made under the credit card of Defendant LIOR CHENE AZULAY. Since Defendant LIOR CHENE AZULAY was selling inventory of Defendant AMANDA STANWIX who then used Defendant LIOR CHENE AZULAY's credit card for such purchases, MAZAL concludes they are in league and have formed a partnership with the intent to purchase, from MAZAL, Brand Products at distribution prices and sell and/or distribute them at prices and in trade channels that are in violation of the AGREEMENT with particularity to Section 1.03 and Section 8, *et seq*.

23. Plaintiff alleges Defendants violated the AGREEMENT with the above actions and conduct and sold to resellers/non-end-users and/or indirectly sold Brand Products online in an unauthorized sales channel.

24. Plaintiff reached out to Defendants numerous times in an attempt to correct Defendants' infringing conduct which damages Plaintiff and harms their relations with

other vendors of BRAND products, among others.

25. Defendants have refused to comply with Plaintiff's demands to adhere to the AGREEMENT and thus Plaintiff seeks judgement against Defendants, each and every one, in this Court.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

26. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

27. MAZAL alleges Defendants repeatedly violated Section 1.03 of the AGREEMENT constituting a material breach pursuant to Section 8 of the AGREEMENT by intentionally selling online, directly or indirectly, rather than end-users as required.

28. MAZAL alleges Defendants also violated Section 8.02.1 by fraudulently representing the identity of the Licensee and the intent to abide by the AGREEMENT. MAZAL further alleges that, Defendant LIOR CHENE AZULAY fraudulently disputed charges made on his credit card in purchasing Brand Products.

29. The violation of the authorized sales channels that are established by MAZAL, does harm to MAZAL by violating their carefully planned distribution network of licensees, disrupting pricing structures, and harming relationships with licensees who are in fact upholding the terms of the agreement and their License Location(s) and pricing but witness others who sell to resellers (or themselves sell) who flood the market at below price structure prices and need not be held to Licensed Location(s) terms. Seeing this, those licensees complain to MAZAL and the result is damaged relations and ruined price structures.

30. Pursuant to Section 8.03 of the AGREEMENT, Plaintiff is entitled to and claims liquidated damages in an amount no less than one hundred thousand US Dollars

($100,000.00) per agreement.

31.   Plaintiff's remedies at law are not adequate to compensate for injuries inflicted by Defendants, and accordingly Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

32.   Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

33.   Plaintiff and Defendants entered in the AGREEMENT.

34.   Every contract imposes certain duties of good faith and fair dealing upon the parties in performance and enforcement of the contract.

35.   Plaintiff did all or substantially all of the obligations required in the AGREEMENT.

36.   As part of Defendants' obligations, Defendants were instructed to limit sale of Brand Products to such sales channels to end users only and only advertise at MAP Guidelines.

37.   Defendants wrongfully, deceptively, intentionally, and in bad faith sold to resellers and/or online in violation of the basic terms of the AGREEMENT.

38.   By selling to resellers and/or online harm was manifested on MAZAL. More than a mere term of the AGREEMENT, the sale in unauthorized channels disrupts and disturbs MAZAL's distribution network and price structure.

39.    MAZAL further alleges that, at the time of entering the AGREEMENT, Defendant AMANDA STANWIX hid or covered up her relation to Defendant LIOR CHENE AZULAY because MAZAL had past and separate interactions with LIOR

CHENE AZULAY resulting in sending him two cease and desist letters.

40. MAZAL does business with, and engages clients in, license agreements, some of which are similar to the AGREEMENT but all of which have important regulations on price and sales channels (namely the licensed locations). This is to make sure sellers (who may be authorized to sell online on Amazon or eBay or example) are afforded their licensed location and not impinged upon by other licensees and that pricing is maintained such that licensees are not in conflict with each other. These structures are in keeping with the ruling in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877 (2007).

41. The action of Defendants deprived certain licensees of their right to stable pricing which they required and for which many were induced to contract with MAZAL and impinged on MAZAL's right to determined licensed locations.

42. MAZAL has fielded numerous complaints from licensees about price and license location infringement of other licensees and their products flooding the market in an unstructured way, in violation of the AGREEMENT. This has become MAZAL's chief concern in recent years.

43. MAZAL's relations with licensees and potential licensees and the business they would have drawn has suffered as a consequence.

44. Plaintiff has suffered injury and damages and has lost income and/or property as a result of Defendants' unlawful and unfair practices in violation of Plaintiff's legally protected interests in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

NEGLIGENT INTERFERENCE WITH AN ECONOMIC RELATION

BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

45. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

46. Plaintiff was engaged in, at the time of the events described herein, and is

presently engaged business relations with licensees through licenses.

47. Defendants knew or should have known about these relations. Defendants knew or should have known that the actions described herein, namely the laws through unauthorized channels and the disruption of MAZAL's distribution network would do substantial harm to MAZAL. By undercutting fellow licensees, Defendants did substantial harm to the reputation of the BRAND and the business of licensees while harming Plaintiff's relations to the licensees, due to Plaintiff's perceived inability to enforce vertical pricing models.

48. Defendants failed to act with reasonable care and harmed MAZAL as a result of their breach of contact.

49. Due directly and substantial to Defendants' wrongful conduct, MAZAL's relations with other licensees and business relations were harmed.

50. Defendants is liable for negligent interference with an economic relation.

51. Plaintiff has suffered injury and damages and has lost income and/or property as a result of Defendants' negligent interference with their economic relations in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

### BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

52. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

53. Defendant AMANDA STANWIX and Defendant LIOR CHENE AZULAY engaged in a fraudulent scheme to represent to MAZAL, its representatives and agents, that it a) intended to abide by the contract b) that Defendant AMANDA STANWIX was the sole contracting representative c) disputing the credit card charges under false allegation.

54. On or about May 3, 2018, Defendant AMANDA STANWIX made

representations to her MAZAL sales representative that were material to the AGREEMENT. That among them were Section 1.03 of the AGREEMENT and the signature line, representing that she alone was the Licensee, whereas she was in league with Defendant LIOR CHENE AZULAY.

55. On or about May 3, 2018, May 14, 2018, May 30, 2018, June 11, 2018, June 18, 2018, June 21, 2018 June 26, 2018 Defendant AMANDA STANWIX made purchases of Brand Products using Defendant LIOR CHENE AZULAY credit card, however on the credit card authorization paper's Defendant AMANDA STANWIX lists her name rather than Defendant LIOR CHENE AZULAY's, fraudulently representing that it was her card.

56. Plaintiff reasonably relied on these representations which formed the basis of their consent, in a material fashion, to the AGREEMENT and was unaware of this before execution of the AGREEMENT. Had the above been known, Plaintiff would not have agreed to execute the AGREEEMENT.

57. Plaintiff now believes that the Brand Products have entered the stream of online commerce, done substantial harm to MAZAL's business relations, encouraged others to do the same, and harmed the stability of MAZAL's pricing structure.

58. Plaintiff alleges that due to the above and the above actions are, in fact, the proximate cause for MAZAL's injuries above.

59. Plaintiff is entitled to damages to be proven at trial but include punitive damages.

## FIFTH CAUSE OF ACTION

### TRADEMARK INFRINGEMENT LANHAM ACT 15 U.S. CODE § 1114
### BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

60. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

61. Plaintiff has right to license and sublicense certain intellectual property in connection with the BRAND.

62. The owners of the trademarks of BRAND, specifically Vine Vera® have and maintain USPTO registrations for this trademark including, inter alia, registration numbers 4447287, 4447286, and 4388865 ("Trademarks"). All of which are used presently in commerce and subject to Plaintiff's exclusive right to sublicense.

63. On or about July 23, 2018, Plaintiff terminated Defendants' right to use and display Trademarks and other intellectual property.

64. Defendants continued to use Trademarks online in their online stores "pelicancase1" and "Glamour Spot" and in other manners.

65. Defendants have engaged in the use in commerce of Trademarks in connection with the sale, offering for sale, distribution, or advertising of goods and services. This use is likely to cause confusion, mistake, or deception as to affiliation, connection or association of Defendants with Plaintiff and the Vine Vera® brand, or as to the origin, sponsorship, or approval of the unauthorized Vine Vera® products and retail locations.

66. Additionally, pursuant to the holding in *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009) as adopted in *Moroccanoil, Inc. v. Perfumes World Com, Inc.* (C.D.Cal. 2017) 234 F. Supp. 3d 1026, 1030, items are found to be counterfeit if there are material differences and the threshold for such differences are very low. "[N]o more than a slight difference which consumers would likely deem relevant when considering a purchase of the product." *Zino* at 246. "To be a genuine product in the U.S., it must be <u>identical</u> to authorized products sold in the U.S. and not contain material differences with the authorized product." *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D.Cal. 2011) 810 F.Supp.2d 1013, 1028.

67. <u>Courts have found that material differences exist when there is a difference in customer service, warranty, and quality control.</u> *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D.Cal. 2011) 810 F.Supp.2d 1013, 1026.

68. All authorized sold Vine Vera® products come with a manufacturers' warranty, satisfaction guarantee, and manufacturers' customer service. In addition, authorized Vine Vera® products sold online come with a FINE WINE RETINOL SHEET MASK (as seen in Exhibit B). Defendants do not, because they are not authorized, and therefore are materially different.

69. Defendants' use Trademarks on products that are materially different is likely to cause confusion with consumers, making them believe they are getting the above warranties, services, and items, when in reality they are not.

70. Defendants use of the Trademarks are not approved.

71. Defendants have infringed on Trademarks, and other trademarks to be proven at trial.

72. Plaintiff alleges Defendants willfully, intentionally, maliciously, deliberately and in bad faith infringed on the Trademarks and other intellectual property.

73. As a direct and proximate result of the above actions of Defendants, Plaintiff has suffered compensatory and consequential damages in an amount to be proven at trial.

74. This case qualifies for enhanced damages and attorneys' fees pursuant to 15 USC § 1117.

75. Plaintiff's remedies at law are not adequate and accordingly Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief.

## <u>SIXTH CAUSE OF ACTION</u>

<u>TRADEMARK DILUTION LANHAM ACT 15 U.S.C. § 1125; CAL. BUS. & PROF. CODE § 14330</u>

BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

76.  Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

77.  Plaintiff has used the Trademarks to identify products of BRAND, including, but not limited to Vine Vera®.

78.  The Trademarks are inherently distinctive and have acquired distinction through Plaintiff's extensive, continuous, and exclusive use of the Trademarks.

79.  The Trademarks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c) and 1127, and Cal. Bus. & Prof. Code § 14330.

80.  Defendants' use of the Trademarks is likely to dilute the distinctive quality of Trademarks in violation of 15 U.S.C. §§ 1125(c) and 1127, and Cal. Bus. & Prof. Code § 14330.

81.  Defendants' acts complained herein are likely to damage Plaintiff irreparably. Plaintiff has no adequate remedy at law for such wrongs and injuries.  The damage to Plaintiff includes harm to its trademarks, trade dress, goodwill, and reputation that money cannot adequately compensate.  Plaintiff is therefore entitled to a preliminary and permanent injunction enjoining Defendants' use of the Trademarks in connection with the promotion, advertising and sale of any goods or services by Defendants.

82.  Plaintiff is further entitled to recover from Defendants the actual damages sustained by Plaintiff as a result of Defendants' wrongful acts.  Plaintiff is presently unable to ascertain the full extent of monetary damages it has suffered by reason of Defendants' acts of dilution.

83.  Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts.  Plaintiff is presently unable to ascertain the extent of the gains, profits, and advantages

84.  Plaintiff is entitled to all remedies under 15 U.S.C. §§ 1117 and 1118 due to the willful, intentional nature of Defendants' actions.

## SEVENTH CAUSE OF ACTION

## STATUTORY AND COMMON LAW UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES – 15 U.S.C. §1125, CAL. BUS. PROF. CODE §17200, *et seq.*

## BY PLAINTIFF MAZAL AGAINST DEFENDANTS AND DOES 1-10

85.   Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

86.   California has long maintained trademark infringement is a form of unfair competition.

87.   Defendants have engaged in business practices that have infringed on the Trademarks and other intellectual property that Plaintiff has exclusive rights to.

88.   By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair, or fraudulent business practices" in violation of §§ 17200 *et seq.*, of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

89.   Plaintiff's remedies at law are not adequate and accordingly Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief.

90.   Plaintiff is entitled to recovery in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgement against Defendants, and each of them, as follows:

1. For damages derived from the expected enjoyment which Plaintiff would have received if the AGREEMENT were fully performed by Defendants.

2. For liquidated damages in an amount no less than one hundred thousand US Dollars ($100,000.00) per Section 8, *et seq.* of the AGREEMENT.

3. For specific performance of post-termination provisions contained in the AGREEMENT.

4. For general and consequential damages to be established at trial.

5. For injunctive relief.

6. For costs of suit incurred herein pursuant to the Guaranty of Licensee's Agreement section of the AGREEMENT.

7. Punitive and multiplicative damages due to fraud.

8. For damages pursuant to the Lanham Act, 15 U.S.C. § 1117, including attorneys' fees, multiplicative damages, and any and all statutory damages that may apply.

9. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: 08/___/2018

By:_/s/Nima Farboody_____
     NIMA FARBOODY
     Attorney for Plaintiff
     MAZAL GROUP, LLC

Exhibit A
AGREEMENT

# Exhibit B